UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60077-CIV-ZLOCH

JORGE G.Z. CALIXTO,

        Plaintiff,

vs.                                        O R D E R

WATSON BOWMAN ACME
CORP.,

        Defendant.
_____/

THIS MATTER is before the Court upon Plaintiff Jorge G.Z.
Calixto's Motion To Compel Watson Bowman Acme Corp. To Comply With
Rule 30(b)(1) Notice To Take Deposition Of Defendant By And Through
Markus Burri As Managing Agent (DE 36).  The Court has carefully
reviewed said Motion and the entire court file and is otherwise
fully advised in the premises.

Plaintiff's Motion To Compel seeks an order from the Court
directing Defendant to produce Markus Burri to testify on behalf of
Watson Bowman Acme Corp. (hereinafter "WABO").  Defendant objects
on multiple grounds, the primary basis of which is that Mr. Burri
no longer works for WABO.  Rather, he is now located in Switzerland
and is employed by BASF Construction Chemicals Europe AG
(hereinafter "BASF Europe"), which is a wholly owned subsidiary of
the German corporation BASF AG, as is WABO.  DE 48, p. 5.  For the
reasons expressed below, the Court will grant the instant Motion.

I. Background

Plaintiff was the owner of a patent and trademark that covered

a well-known expansion joint used in the construction industry. Plaintiff's expansion joint provides a waterproof seal between concrete slabs that permits the concrete to expand and contract with the weather conditions. This waterproof seal ameliorates the natural wear and tear that inclement conditions can have on concrete structures. Plaintiff also trademarked a name for this seal: Jeene.

On November 23, 2003, Plaintiff negotiated an Asset Purchase Agreement (hereinafter the "Agreement") with Construction Research Technology, GmbH (hereinafter "CRT"). The Agreement transferred title of the patented method and Jeene trademark to CRT for certain geographic areas. Prior to the Agreement being formed, Plaintiff and WABO entered into a series of license agreements that gave WABO certain rights to use the Jeene patent and trademark. In November of 2003, WABO was a wholly owned subsidiary of Degussa Construction Chemicals Corp. (hereinafter "Degussa Corp."), which in turn was a wholly owned subsidiary of Degussa AG, a German company. CRT held title to the intellectual property used by Degussa Corp. and its subsidiaries. In June of 2006, BASF Construction Chemicals, LLC (hereinafter "BASF USA"), a United States subsidiary of BASF AG, acquired the construction chemical business of Degussa AG, including all of its subsidiaries.

Plaintiff alleges that while he and CRT were negotiating the Agreement, they were simultaneously negotiating a license agreement for the Asia/Pacific territory. The Agreement provided that if an

2

agreement could not be reached regarding the Asia/Pacific territory, no affiliate of CRT or any successor was to import, manufacture, distribute, or sell any product using the method of the patent or the trademark in that territory.  Plaintiff alleges that after the Agreement was signed, but before an agreement was made concerning the Asia/Pacific territory, Degussa, WABO, and their affiliates began selling a counterfeit product produced using Plaintiff's patented method and marketed under the name "Aladdin." Plaintiff alleges that this conduct violates the Agreement, and it is the subject of this lawsuit.

Plaintiff filed several suits in state court attempting to remedy the apparent breach of the Agreement, the first of which was filed on March 18, 2005.  See DE 9, Appx. B.  For various reasons, Plaintiff voluntarily dismissed his suits and filed this action alleging tortious interference with contract by WABO and BASF USA. By prior Order (DE 59), the Court dismissed BASF USA from this suit.

WABO concedes that Markus Burri was present at the negotiations related to the Agreement and claims that he served as CRT's attorney-in-fact. DE 48, pp. 1-2. WABO also admits that Mr. Burri served as its CEO from 1999 until at least 2004.  Id. at 4. Further, WABO does not deny that Mr. Burri has important information about the Agreement; rather, it opposes his deposition

3

primarily because he no longer works for WABO.[1]

## II. Analysis

Plaintiff noticed the deposition of Mr. Burri pursuant to Federal Rule of Civil Procedure 30(b)(1). Under Rule 30(b)(1), any person can be deposed, including "any person associated with [a] corporation and acquainted with the facts." 8A Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2103 (1994 & West Supp. 2008). Further, a subpoena need not be issued if the person to be deposed is a party, officer, director, or managing agent of a party. 8A Wright, supra, § 2107. It is clear that Mr. Burri was the managing agent of WABO because he served as its CEO from 1999-2004.[2]  However, he is no longer employed by WABO; rather, he works for sister corporation BASF Europe.

### A. Managing Agent

In the instant Motion, Calixto bears the burden of producing "enough evidence to show that there is at least a close question whether the proposed deponent is the managing agent." United States v. Afram Lines (USA), Ltd., 159 F.R.D. 408, 413 (S.D.N.Y.

---

[1]The record reflects and the Parties do not dispute that WABO, BASF USA, and BASF Europe are all subsidiaries of parent corporation BASF AG.

[2]Although courts typically engage in a five-factor analysis to determine whether a person is a managing agent, the precise question before the Court is not whether Mr. Burri was ever a managing agent, but rather, under what circumstances, if any, can a former managing agent be compelled to testify under Rule 30(b)(1). See, e.g., Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 160, 170 (S.D.N.Y. 1994).

1994).   Furthermore, "a determination that the witness is a managing agent may be made provisionally . . . while awaiting the deposition testimony before determining whether the witness is an agent for purposes of binding the corporation." <u>Schindler Elevator Corp. v. Otis Elevator Co.</u>, 2007 WL 1771509, at *3 (S.D.N.Y. June 18, 2007) (citations omitted).   Thus, deposition testimony is necessary to determine with precision the extent to which Mr. Burri's interests are aligned with WABO and the nature of his ongoing involvement with WABO, if any.

The issue before the Court is whether a person who was a managing agent of a WABO at the time relevant to the subject matter of the case, but who has since transferred to a position with a sister company of WABO, fits within the definition of "managing agent" such that the company can be compelled to produce Mr. Burri to testify under Rule 30(b)(1).

The determination of whether a person is a managing agent, and therefore subject to a Rule 30(b)(1) notice of deposition, is not formulaic; rather, it is a fact-specific inquiry.   8A Wright, <u>supra</u>, § 2107.   To make such a determination, courts focus on whether the person had power regarding the matters at stake in the litigation and whether the person's interests are still aligned with the corporation. <u>See, e.g.</u>, <u>Dubai Islamic Bank v. Citibank, N.A.</u>, 2002 WL 1159699 (S.D.N.Y. May 31, 2002); <u>Calgene, Inc. v. Enzo Biochem, Inc.</u>, 1993 WL 645999 (E.D. Cal. Aug. 23, 1993); <u>U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.</u>, 2001 WL 43607

(S.D.N.Y. Jan. 17, 2001).

The first factor the Court will consider is the power Mr. Burri had regarding the negotiation of the Agreement. At the time Plaintiff negotiated the Agreement with CRT, Mr. Burri was serving as its CEO. Further, Mr. Burri was present at the negotiations of the Agreement that gave rise to this suit, and according to WABO, he was CRT's attorney-in-fact for the negotiations. See DE 48, pp. 1-2. Thus, he quite clearly had power regarding matters at stake in this case. The extent to which Mr. Burri was also representing the interests of WABO is not yet fully clear, but that can be inquired into at his deposition.

The second factor assesses the extent to which a person's present interests are still aligned with the corporation. Courts attribute managing agent status to persons who no longer have authority over the matters at issue and who no longer hold a position of authority within the corporation, "so long as those individuals retained some role in the corporation or at least maintained interests consonant with rather than adverse to its interests." Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1456 (D.C. Cir. 1986) (citations omitted). At the very least, Mr. Burri's interests are still aligned with WABO's because he is now working for BASF Europe, a sister company to WABO that is also a subsidiary of BASF AG. At this point in litigation, little is known with regard to Mr. Burri's current position at BASF Europe and his interactions with

WABO.   Thus, a deposition is necessary to determine the precise scope of his current duties.

WABO argues that Mr. Burri's involvement in the negotiation of the Agreement is irrelevant because this action is for tortious interference of contract, not breach of contract.   However, Mr. Burri's involvement in the contract formation is relevant because it may be used to establish WABO's knowledge of the Agreement, which is part of a tortious interference claim.   See KMS Rest. Corp. v. Wendy's Int'l, Inc., 194 Fed. Appx. 591, 603 (11th Cir. 2006).   Accordingly, for the purpose of the instant Motion, the Court finds that Mr. Burri is a managing agent of WABO because he exercised power during the formation of the Agreement and his interests are aligned with WABO.   Therefore, Plaintiff may take his deposition under Rule 30(b)(1) by giving notice to the corporation.

### B. Swiss Law and the Hague Convention

WABO claims that the law of Switzerland prohibits Mr. Burri's deposition absent his express permission. DE 48, pp. 3, 12.   WABO cites no law in support of this proposition.   In the instant Motion, Plaintiff attached as Exhibit T an excerpt from a memorandum drafted by Switzerland's Federal Office of Justice that addresses the applicable law.   See DE 36, Ex. T (hereinafter "FOJ Memo").   Article 271, paragraph 1 of the Swiss Penal Code states that "it is an offence for anyone 'to carry out on Swiss territory without lawful authority activities on behalf of a foreign state that are the responsibility of a public authority' as well as for

7

anyone 'to carry out such acts on behalf of a foreign party or organization' or for anyone to 'encourage such acts.'" <u>Id.</u> at p. 2.  The FOJ Memo further explains that obtaining evidence for foreign court proceedings may only be carried out by resort to certain mechanisms for assistance, namely the Hague Convention. <u>Id.</u>

The Court notes that the relevant Swiss law is strikingly similar to the French Penal Code involved in the landmark Supreme Court case <u>Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. IA</u>, 482 U.S. 522 (1987).   In <u>Aerospatiale</u>, Plaintiffs sought document production from the French government, which insisted that production can only be obtained by resort to the Hague Convention.   The French government cited the French Penal Code that made such document production illegal.  <u>Id.</u> at 526.  Notwithstanding the existence of the French statute, the Supreme Court explained that it "d[oes] not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate the statute."  <u>Id.</u> at 544, n.29.   The <u>Aerospatiale</u> Court further reasoned that the Hague Convention should not be interpreted as the exclusive means for obtaining evidence located abroad because American courts should not be subject to the internal laws of foreign states.  <u>See</u> <u>id.</u> at 539.  Further, exclusive reliance on the Hague Convention could frustrate even the most routine of discovery tasks, such as interrogatories and depositions.  <u>Id.</u>

Thus, two clear points of law from <u>Aerospatiale</u> apply to this case.  First, resort to the procedures for gathering evidence provided by the Hague Convention are optional and are not intended to strip American courts of their power to manage common pretrial proceedings such as depositions.  Second, statutes like the Swiss law in this action, do not deprive American courts of their power over parties subject to their jurisdiction.

The Court will not require Plaintiff to resort to the Hague Convention because the Convention will not facilitate the gathering of evidence more effectively than the procedures already in place through the Federal Rules.  Also, the Court finds that the Swiss statute does not deprive the Court of its ability to compel WABO to produce Mr. Burri for a deposition because this Court has subject matter jurisdiction over the case and personal jurisdiction over WABO.  Therefore, the Court will order WABO to produce Mr. Burri for a deposition in London, England, or a location otherwise convenient for Mr. Burri, at a time and date agreed upon by the Parties.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. That Plaintiff Jorge G.Z. Calixto's Motion To Compel Watson Bowman Acme Corp. To Comply With Rule 30(b)(1) Notice To Take Deposition Of Defendant By And Through Markus Burri As Managing Agent (DE 36) be and the same is hereby **GRANTED**; and

2. That Defendant Watson Bowman Acme Corp. shall produce

9

Markus Burri for deposition by Plaintiff at a time and date convenient to the Parties in London, England, or at a location otherwise convenient for Mr. Burri, and said deposition shall be held no later than <u>Friday, October 31, 2008</u>.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this _____ day of _____, 2008.

_____
WILLIAM J. ZLOCH
United States District Judge

Copies furnished:

All Counsel of Record