UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60077-CIV-ZLOCH

JORGE G.Z. CALIXTO,

      Plaintiff,

vs.                                                        **O R D E R**

WATSON BOWMAN ACME CORP.,

      Defendant.
_____/

THIS MATTER is before the Court upon Defendant Watson Bowman Acme Corp.'s Memorandum Of Law Regarding The Applicable Choice Of Law (DE 100), which the Court construes as a Motion To Apply The Substantive Law Of New York.  The Court has carefully reviewed said Motion and the entire court file and is otherwise fully advised in the premises.

## I. Introduction

This case has been pending for some time.  Defendant has on two prior occasions motioned the Court for a ruling on the substantive law that will apply to the case, indicating that it could be outcome determinative.  However, the Court declined both times because the factual record was insufficient for such a determination.  Now that significant discovery has taken place, and the case is on the verge of requiring extensive and costly discovery, the Court shall determine the substantive law.  For the reasons expressed below, the Court shall apply the law of New York because it has the most significant relationship to this case.

## II. <u>Background</u>

Plaintiff is a resident and citizen of Brazil and was the owner of a United States patent and trademark for the "Jeene", a well-known expansion-joint system used in the construction industry. Jeene provides a waterproof seal between concrete slabs that permits the concrete to expand and contract with the weather conditions. This waterproof seal ameliorates the natural wear and tear that inclement conditions have on concrete structures. Defendant Watson Bowman Acme Corp. (hereinafter "WABO") is incorporated in Delaware with its principal place of business in New York.

On November 23, 2003, Plaintiff negotiated an Asset Purchase Agreement (hereinafter the "Purchase Agreement") with Construction Research Technology, GmbH (hereinafter "CRT"). The Purchase Agreement transferred title of the patented method and Jeene trademark to CRT. Prior to the Purchase Agreement being formed, Plaintiff and WABO entered into a series of license agreements that gave WABO certain rights to use the Jeene patent and trademark. The negotiations for those agreements occurred in New York. DE 100, pp. 5-6. In November of 2003, WABO was a wholly owned subsidiary of Degussa Construction Chemicals Corp. (hereinafter "Degussa Corp."), which in turn was a wholly owned subsidiary of Degussa AG, a German company. CRT held title to all intellectual property used by Degussa Corp. and its subsidiaries. In June of

2006, BASF Construction Chemicals, LLC. (hereinafter "BASF") acquired the construction chemical business of Degussa AG, which resulted in WABO and CRT being placed under the umbrella of BASF.

While Plaintiff and CRT were negotiating the Purchase Agreement, they were simultaneously negotiating a license agreement for the Asia/Pacific Territory.  The Purchase Agreement provided that if an agreement could not be reached, no affiliate of CRT or any successor was to import, manufacture, distribute, or sell any product using the method of the patent or the trademark in the Asia/Pacific Territory.  Plaintiff alleges that after the Purchase Agreement was signed, but before an agreement was made concerning the Asia/Pacific Territory, Degussa, WABO, and their affiliates began selling a counterfeit product produced using Plaintiff's patented method and marketed under the name "Aladdin."  Plaintiff alleges that this conduct violates the Purchase Agreement.

Plaintiff filed several state suits in an attempt to remedy this apparent breach of the Purchase Agreement.  For various reasons Plaintiff voluntarily dismissed his suits and filed this action alleging tortious interference with contract by WABO.[1] Plaintiff's tortious interference claim against WABO is premised on the allegation that WABO continues to infringe on the Jeene trademark and patent in the Asia/Pacific Territory in contravention

---

[1] By prior Order (DE 59) Defendant BASF Construction Chemicals, LLC was dismissed from the case to preserve this Court's diversity jurisdiction.

of the Purchase Agreement between Calixto and CRT. Plaintiff alleges injury in the form of monetary damages, lost sales, and irreparable injury to his reputation and goodwill by virtue of the continued sales of Aladdin in the Asia/Pacific Territory.

For purposes of the choice-of-law analysis, Plaintiff alleges that he suffered financial injury at his place of residence and citizenship, Brazil, and that the place of his injury is the most important factor for the Court to consider. Defendant counters by arguing that the place of injury is spread widely throughout the Asia/Pacific Territory; also, the place of injury is not the most important consideration. Rather, the place of the conduct causing the injury is the most important factor, and Defendant alleges that occurred exclusively in New York. Specifically, Defendant alleges that its entire operation is managed from New York, all of its purchase orders and customer invoices are processed in New York, and all products are shipped FOB New York.[2] Plaintiff acknowledges the shipment of products from WABO and does not dispute their being shipped from New York, but rather emphasizes their final destination to the Asia/Pacific Territory. Plaintiff also emphasizes meetings held in New York between WABO's engineering

---

[2] FOB is a standard shipping term that stands for "Free on Board" and indicates that the risk of loss and the delivery of the goods occurs at the point when the goods pass the ship's rail at the port of shipment. Incoterms 2000, ICC Publ'n No. 560, p. 49. Thus, the legal transfer of goods occurs at the port of shipment, and in this case it occurred in New York.

personnel in New York and affiliates from the Asia/Pacific Territory, where they discussed making products locally in the Asia/Pacific Territory rather than importing them from WABO's New York headquarters.  While both sides agree on the facts to be applied to the choice-of-law analysis, they differ on the result.

III.  <u>Choice of Law</u>

Plaintiff's Complaint invokes this Court's diversity jurisdiction.  It is well established that when a federal district court exercises its diversity jurisdiction, the court is bound to apply state substantive law and federal procedural law.  <u>Walker v. Armco Steel Corp.</u>, 446 U.S. 740, 745 (1980); <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938); <u>see</u> Rules of Decision Act, 28 U.S.C. § 1652 (2006).  This includes the forum states choice-of-law rules.  <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941).  Florida applies the "most significant relationship" test, as set forth in the Restatement (Second) of Conflict of Laws (hereinafter "Restatement").  <u>Bishop v. Fla. Specialty Paint Co.</u>, 389 So. 2d 999, 1001 (Fla. 1980); <u>Grupo Televisa, S.A. v. Telemundo Commc'n Group, Inc.</u>, 485 F.3d 1233, 1240 (11th Cir. 2007).  Courts applying the most significant relationship test consider the following four factors: 1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3) the domicile, residence, nationality, place of incorporation, and place

of business of the parties; and 4) the place where the parties'
relationship is centered.  <u>Bishop</u>, 389 So. 2d at 1001.

The Restatement provides commentary on the proper weight that
should be attributed to each factor depending on the type of case
involved.  For instance, in personal injury actions, the place
where the injury occurred is the most important factor to consider.
Restatement (Second) of Conflict of Laws § 145 cmt. e (1971).  The
reasoning behind such emphasis is that "persons who cause injury in
a state should not ordinarily escape liabilities imposed by the
local law of that state on account of the injury."  <u>Id.</u>  However,
this rule contemplates a personal injury in which the location of
the injury is easy to define and, generally speaking, occurs in one
state.

The place of the injury is less important in cases involving
unfair competition, such as this case where tortious interference
with a contractual relationship is alleged.  <u>Telemundo</u>, 485 F.3d at
1241 (citing Restatement, <u>supra</u> § 145 cmt. f).  The injury suffered
in unfair competition cases is the loss of customers or trade and
often occurs at multiple locations, though it may be felt by a
plaintiff at its principal place of business.  Restatement § 145
cmt. f.  Further, the place where the injury is felt may have a
marginal relationship to the tortious conduct and subsequent loss
of trade.  <u>Id.</u>  Therefore, in such cases, "the principal location
of the defendant's conduct is the contact that will usually be

given the greatest weight in determining the [applicable law]."
Id.

### A. Place of the Injury

As stated above, the place of injury in this case is the location where any customer or trade is lost. The record reflects that the alleged loss of business occurred in the Asia/Pacific Territory. There are multiple locations in which Plaintiff alleges a counterfeit of Jeene was sold in this region, including Thailand, Australia, Japan, New Zealand, Indonesia, Fiji, Hong Kong, and Singapore. DE 105, p. 4. While the Restatement acknowledges that a person or business may feel the effects of a loss in the principal place of business, that location is of marginal significance. Restatement § 145 cmt. f. Thus, even though Plaintiff's citizenship, residence, and place of business are in Brazil, and it is likely that he felt the effects of a pecuniary loss there, that is of lesser importance than the locations in which Plaintiff lost customers or trade. Id. The Court finds that the alleged place of injury is widespread in the Asia/Pacific Territory and is of secondary importance to the place of the conduct causing the injury.

### B. Place of the Conduct Causing the Injury

The thrust of Defendant's conduct, the selling and shipping of Aladdin products, is from New York. Defendant claims that its entire operation is managed from New York, invoices are sent from

New York, sales are completed in New York, and all of its products are shipped FOB New York.  Plaintiff admits that Defendant and its Asia/Pacific affiliates attended meetings in New York, and that Defendant made direct shipments to several countries in the Asia/Pacific Territory.  Although Plaintiff does not allege the location from which those shipments were made, the record is clear that it is New York.  Thus, the conduct causing the injury occurred in New York.

### C. <u>Location of the Parties</u>

This factor is not helpful in determining the choice of law because the Parties are from diverse locations.  Plaintiff is a resident and citizen of Brazil, and he operates his business in Brazil.  Defendant is incorporated in Delaware and has its principle place of business in Amherst, New York.  In essence, this factor is a draw.

### D. <u>Place Where the Parties' Relationship is Centered</u>

If the Parties' relationship is centered anywhere, it is in New York.  Prior to forming the Purchase Agreement, Calixto and WABO executed multiple license agreements allowing WABO to sell the Jeene product worldwide.  DE 100, pp. 5-6.  The negotiations for those agreements occurred in New York.  Aside from these meetings, the record is silent as to where the relationship is centered. Therefore, the Court finds the Parties' relationship is centered in New York, the place of all prior contract negotiations.

IV.   <u>Conclusion</u>

The Court hereby finds that the place of conduct causing the injury is New York, and this is the most important factor to consider in this case.  The injury occurred in various locations throughout the Asia/Pacific Territory, though Plaintiff may feel the effects of the injury in Brazil.  The Parties locations are diverse and include New York.  Also, the relationship of the Parties is centered in New York.  Therefore, New York has the most significant relationship to this case, and the Court will apply its substantive law.  <u>Erie</u>, 304 U.S. at 78; <u>Klaxon</u>, 313 U.S. at 496.  Further, the Court is of the opinion that this Order involves a controlling question of law as to which there is a substantial ground for difference of opinion, and immediate appeal may materially advance the ultimate termination of this case. As such, Plaintiff is free to seek interlocutory review within ten days of the entry of this Order.  28 U.S.C. § 1292(b) (2006).

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendant Watson Bowman Acme Corp.'s Memorandum Of Law Regarding The Applicable Choice Of Law (DE 100), which the Court construes as a Motion To Apply The Substantive Law Of New York, be and the same is hereby **GRANTED**, and the substantive law of New York shall govern the claims in this action;

2. The Parties may resume conducting discovery in the above-styled cause and may renew previously filed Motions that the Court denied pending this ruling; and

3. By <u>noon</u> on <u>Friday, June 12, 2009</u>, the Parties shall file a Memorandum stating their proposed discovery plan and timetable for the resolution of this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this ___2nd___ day of June, 2009.

_William J. Z_

WILLIAM J. ZLOCH
United States District Judge

Copies furnished:

All Counsel of Record

10